IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT GORITY,                          )
                                        )
            Plaintiff,                  )
                                        )
       vs.                              )   Civil Action No. 10-69-J
                                        )
MICHAEL J. ASTRUE,                      )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
            Defendant.                  )

ORDER

AND NOW, this 29th day of March, 2011, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 9) filed in the above-captioned matter on June 14, 2010,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Defendant's Motion for Summary Judgment (document No. 11) filed in the above-captioned matter on July 14, 2010,

IT IS HEREBY ORDERED that said Motion is DENIED. However, because the record does not permit the Court to determine whether substantial evidence supports the decision of the administrative law judge, the Court will remand this case to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

I. **Background**

On August 12, 2006, Plaintiff Robert D. Gority filed his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Specifically, Plaintiff claimed that he became disabled on February 25, 2006, due to knee injuries, complications from a childhood skull fracture, including short-term memory loss and mental impairments, and respiratory distress syndrome.[1] (R. 110, 144).

After being denied initially on February 14, 2007, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on April 1, 2008. (R. 70, 73-77, 746-79). In a decision dated May 27, 2008, the ALJ denied Plaintiff's request for benefits. (R. 16-27). The Appeals Council declined to review the ALJ's decision on January 28, 2010. (R. 8-10). On March 11, 2010, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he

---

[1] As discussed below, there is a further issue of whether Plaintiff alleged a disability in regard to his right hand.

2

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. At 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her

4

past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through March 31, 2010. (R. 18). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that he was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability, despite an unsuccessful work attempt. (R. 19). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had several severe

impairments, specifically, a history of right leg injury, status post meniscectomy with secondary reflex sympathetic dystrophy, lumbar degenerative disc disease, a remote history of a skull fracture from a childhood accident involving a sled and a car with a cognitive disorder NOS, a post-traumatic stress disorder, a major depressive disorder, and a generalized anxiety disorder. He found, however, that Plaintiff's stomach ulcers, gastroesophageal reflux disease, bilateral dislocated hips, and left middle and fourth finger injuries did not constitute severe impairments. (R. 19-20). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 20-22).

The ALJ found that Plaintiff retained the RFC to engage in sedentary work, but that he must avoid all occupations that require balancing, exposure to dangerous machinery or unprotected heights, kneeling, crouching, crawling, pushing and pulling with the right lower extremity, climbing on ladders, ropes, and scaffolds, or more than occasional climbing on ramps and stairs, and which would accommodate an option to sit and stand 1-2 minutes during the work day at will. In addition, he found that Plaintiff is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and, in general, relatively few work place changes, and to occupations which require no more than occasional interaction with supervisors, co-workers, and members of the general public. Finally, he found that Plaintiff was limited to occupations which require no prolonged reading for content and comprehension or mathematical

calculations, such as a cashier or teller work, and which are generally limited to 1-2 step tasks. (R. 22-25). Based on this RFC, Plaintiff established that he is incapable of returning to his past employment; therefore, the ALJ moved on to step five. (R. 25-26). The ALJ then used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs, including product inspector, nut sorter, and ampoule sealer, that exist in significant numbers in the national economy. (R. 26-27, 776). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 27).

## IV. Legal Analysis

Plaintiff raises several arguments as to why the ALJ erred in finding that he was not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that substantial evidence does not support the ALJ's decision. Specifically, the Court believes that the ALJ failed to consider evidence regarding possible impairments involving Plaintiff's right hand. Moreover, the Court finds that the record is insufficient to support the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE, particularly in regard to Plaintiff's ability to stoop. Accordingly, the Court will remand the case for further consideration.

Plaintiff argues that the limitations in the use of his right arm and hand, when combined with the limitation to sedentary work provides a basis to find him disabled. The Commissioner, in response, argues that since Plaintiff did not allege any impairment with regard to the use of

7

his right hand until after the ALJ issued his decision, he failed to meet his burden of proof in regard to any such impairment. While the Court does agree that Plaintiff was less than diligent in presenting this alleged impairment to the ALJ, remand on this issue is nevertheless warranted.

Pursuant to 20 C.F.R. §§ 404.1512(a) and 416.912(a), it is the burden of the claimant to furnish medical and other evidence that the Commissioner can use to determine the issue of disability. However the regulations state that the Commissioner will consider impairments a claimant says he or she has or about which the Commissioner has received evidence. Here, there is at least some evidence of a right hand tremor that may constitute an impairment. (R. 287, 693). Indeed, Dr. Wayne D'Agaro, Psy.D., found in his March 2, 2007 neuropsychological evaluation of Plaintiff that his "dominant right hand was mildly to moderately impaired on a measure of fine motor speed and manual dexterity that required the placement of pegs into slotted holes." (R. 287). He further found that Plaintiff experienced "mild difficulty on a measure of right hand unimanual sequencing, on a measure of bimanual coordination that required simultaneous use of both hands, on a measure of motor planning and execution (praxis), and on a measure of motor control and regulation." (Id.).

As Plaintiff points out in his brief, Social Security Ruling (SSR) 96-9p provides:

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

8

> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

SSR 96-9p, 1996 WL 374185 (S.S.A.), at *8 (emphasis in original).[2] See also SSR 83-14, 1983 WL 31254 (S.S.A.), at **2, 4; Davis v. Astrue, 741 F. Supp. 2d 582, 590-91 (D. Del. 2010). Therefore, any significant manipulative limitations or problems with manual dexterity could lead to an erosion of the relevant occupational base. As such, the ALJ should have either included any such limitation in the RFC or explained why inclusion was not warranted.

Of course, it appears that the reason that the ALJ did not discuss any potential right hand impairments is that Plaintiff was, at best, inconsistent in raising the issue. While his application materials do include reference to "constant shaking" in his right hand (R. 130), in other materials submitted on June 18, 2007, he does not indicate that he has any limitations in regard to his hands. (R. 172). Likewise, he did not discuss any problems with his right hand at the hearing. This situation is further confused based on the fact that, in past applications, Plaintiff has alleged nerve disease and "shakiness" in his

---

[2] An SSR, once issued, becomes binding authority on the SSA's administrative law judges. See Heckler v. Edwards, 465 U.S. 870, 874 n.3 (1984); Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001); 20 C.F.R. § 402.35(b)(1).

*left* hand. (R. 337). As such, it is no wonder that the ALJ did not make specific findings as to this issue.

Nonetheless, Plaintiff did at least reference issues with his right hand in his application, and there is record evidence of some sort of condition. Accordingly, it is appropriate to remand this case so that the record can be fully developed as to what impairments and/or limitations, if any, exist in regard to Plaintiff's right hand and what impact, if any, this has on Plaintiff's RFC.

Although not raised by the parties, there is another reason for remand. Although the ALJ included several postural limitations in the RFC, he did not include any limitations as to stooping. However, there is evidence in the record suggesting that Plaintiff may have such a limitation. The ALJ's failure to address the findings regarding Plaintiff's limitations as to stooping in making the RFC determination and in formulating the hypothetical question to the VE further mandates remand in this case.

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which

ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Further, a hypothetical question to a VE must accurately portray the claimant's physical and mental impairments, although it need reflect only those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

Although the ALJ's decision was quite thorough and contained extensive discussion of Plaintiff's impairments, the ALJ did not specifically address the finding in the November 29, 2006 opinion of Dr. Stan Kotala, M.D., that Plaintiff could never stoop, nor the February 9, 2007 opinion of Dr. Gregory Mortimer, M.D., that Plaintiff could only occasionally stoop. (R. 252, 280). Although the ALJ generally included the limitations suggested by these physicians in the RFC, the record is unclear as to why the limitations as to stooping were not included.

In some cases, this may not have mattered. Here, however, SSR 96-9p makes this a substantial oversight. The ALJ found that Plaintiff could perform sedentary level work with certain limitations and that,

11

based on this RFC and the VE's testimony, he could perform certain unskilled jobs. Pursuant to SSR 96-9p, the frequency with which Plaintiff could stoop could have impacted the amount of erosion of the relevant occupational base. Specifically, SSR 96-9p provides that "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations." It further provides that "[a] **complete** inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." SSR 96-9p at *8 (emphasis in original).

This is consistent with case law indicating that ALJs must discuss a plaintiff's postural limitations, particularly the ability to stoop, which factor into the determination of whether a claimant can perform a full range of sedentary work. See Butler v. Barnhart, 353 F.3d 992, 1000-01 (D.C. Cir. 2004); Spaulding v. Halter, 11 Fed. Appx. 596, 600 (7th Cir. 2001); Chester v. Callahan, 193 F.3d 10, 13 (1st Cir. 1999); Guyer v. Astrue, 2009 WL 482245 (W.D. Pa. Feb. 25, 2009); De Aza v. Commissioner of Soc. Sec., 2008 WL 4723778, at *4 (D. N.J. Oct. 24, 2008); Bailey v. Apfel, 2001 WL 722787, at *3 (E.D. Pa. June 26, 2001). Where, as here, there is conflicting evidence in the record, the ALJ must explain which evidence he accepts and rejects and the reasons for his determination. See Cruz v. Commissioner of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)). See also Fargnoli, 247 F.3d at 42.

There is conflicting evidence as to Plaintiff's ability to stoop, with Dr. Kotala finding a complete inability to stoop, while Dr.

12

Mortimer found only a limited inability to do so.[3] Both opinions differ from the ALJ's implicit finding that Plaintiff has no limitation as to stooping. The ALJ is not necessarily obligated to accept either contrary opinion, but he cannot ignore the findings of these physicians. The Court expresses no opinion as to whether the ALJ's RFC determination and hypothetical in regard to Plaintiff's ability to stoop **could** be supported by the record. It is the need for further explanation that mandates the remand on this issue.

Although Plaintiff asks this Court to reverse the ALJ's decision and award benefits, the record simply does not allow the Court to do so. First, for the reasons discussed above, the administrative record has not been fully developed. In any event, the Court cannot find that substantial evidence in the record as a whole indicates that Plaintiff is disabled and entitled to benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984). The Court does emphasize, notwithstanding the fact that, as stated, it does not necessarily agree with all of the arguments raised by Plaintiff, that all credibility determinations, Step Two analysis, evaluation of listings, RFC determinations, and all other analysis must be done in accordance with the applicable law so as to alleviate any need for any further remands.[4]

---

[3] There are also older medical opinions relating to Plaintiff's earlier application for benefits that also differ as to Plaintiff's ability to stoop. (R. 452, 520, 603).

[4] Of course, on remand, the ALJ should be conscious of the other issues raised by Plaintiff regarding the determination of Plaintiff's cognitive limitations and the weighing of medical evidence, including the opinion of Dr. Jubala that Plaintiff has a

13

## V. Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:    Counsel of record

---

marked ability to make judgments on simple work-related decisions.